O<br>JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

<u>CIVIL MINUTES – GENERAL</u>

Case No. SACV 11-596 DOC                                    Date: June 22, 2012
         SACR 05-0010 DOC

Title: <u>UNITED STATES OF AMERICA V. CURTIS JEFFREY BENFORD</u>

PRESENT:

<u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

<u>Julie Barrera</u>                          <u>     N/A     </u>
Courtroom Clerk                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present                         None Present

**PROCEEDINGS: (IN CHAMBERS): ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS**

Before the Court is *pro se* Petitioner Curtis Jeffrey Benford's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (the "Motion") (Dkt. 193). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, and for the reasons stated below, the Court hereby DENIES the Motion.

**I.     Background**

Petitioner Curtis Jeffrey Benford ("Benford") was arrested and convicted in the Central District of California for armed robbery of a Bank of America branch. Upon denial of Benford's appeal and writ of certiorari to the Supreme Court, Benford brings this Motion based on claims of ineffective assistance of counsel and due process violations.

**A.  Benford's Offense Conduct**

On December 29, 2004, between approximately 6:45 p.m. and 6:50 p.m., Benford entered a Bank of America branch located inside an Albertsons grocery store. E.R. at 38-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                          Date: June 20, 2012
        SACR 05-10 DOC                                                         Page 2

---

40.[1] Benford, armed with a handgun, demanded that two bank tellers turn over money from their teller drawers and the bank vault, all the while pointing the handgun at the tellers and other Albertsons' shoppers. *Id*. at 42-43. With approximately $203,906 and an Electronic Tracking System ("ETS") planted by the bank teller in his bag, Benford walked through the rear exit of the Albertsons. *Id*. at 91.

     Shortly thereafter, Orange County law enforcement began detecting and tracking an ETS signal transmitted from the ETS in Benford's bag. *Id*. at 113. Brea Police Department Officer Christopher Harvey and other officers tracked the ETS signal to a white Ford Explorer, and upon the vehicle's failure to yield, initiated a high speed chase. *Id*. at 115-19. With the help of Anaheim Police Officers Clint Melberg, who was observing from a helicopter, and Mark Brucks, who was handling a canine unit, law enforcement agents on the ground were able to apprehend Benford and the driver. *Id*. at 164-65. Benford was taken into police custody at 7:04, approximately fifteen minutes after Benford was seen inside Albertsons. *Id*. at 39, 122. From the white Explorer, law enforcement agents recovered a loaded handgun, a bag containing $203,906, and various articles of clothing matching the tellers' description of clothing worn by the bank robber. *Id*. at 106-11, 172-74.

     **B. Pretrial Status Conference**

     On February 28, 2005, the Court held a pretrial status conference to determine the trial date. (Dkt. 36). Although counsel for the co-defendant was present, Benford's counsel was not present and did not appear on the record. E.R. at 25-28. The Court set the trial for March 8, 2005, despite the absence of Benford's counsel. (Dkt. 36).

     **C. Benford's Trial, Sentencing, and Appeal**

     Benford's trial commenced on March 8, 2005 and lasted three days. (Dkt. 49, 57). Prior to the beginning of the trial, Respondent, the United States of America (the "Government"), turned over a number of discovery documents including reports from officers and witnesses. E.R. at 1-22. On the first day of trial, counsel sought assistance from the Government in locating prospective witnesses, which the Government promptly provided. *Id*. at 32-33. During trial, counsel cross-examined each of the Government's

---

[1] "E.R." refers to the Excerpt of Record attached to the Government's opposition brief. Opp'n Excerpt of R. (Dkt. 198).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                     Date: June 20, 2012
        SACR 05-10 DOC                                              Page 3

witnesses regarding their ability to identify Benford and their inconsistent descriptions of the firearm used during the robbery. *Id*. at 50-74, 93-105. Trial counsel additionally made inquiries about the procedure used for a field identification of Benford and presented an affirmative case by calling three law enforcement officials in an effort to impeach statements made by eyewitnesses. *Id*. at 75-85, 178-192, 221-237. At the conclusion of the first day of trial, the Court reviewed the Government's proposed jury instructions and accepted them without objection from the defense. *Id*. at 125-144.

      On March 10, 2005, the jury returned guilty verdicts against Benford and the co-defendant for bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). (Dkt. 57). On April 18, 2007, the Court heard argument on Benford's motion for judgment of acquittal and sentencing before denying the motion and sentencing Benford to a term of imprisonment of 147 months. (Dkt. 149). On August 3, 2009, Benford's conviction and sentence were affirmed by the Ninth Circuit Court of Appeals. *United States v. Benford*, 574 F.3d 1228, 1232 (9th Cir. 2009).

### D. The Instant Motion

      Benford filed the instant motion on April 15, 2011, pursuant to 28 U.S.C. § 2255. Mot. (Dkt. 193). Benford contends that his conviction should be vacated, set aside, or corrected on three separate grounds: (1) the unconstitutional denial of counsel at the February 28, 2005 pretrial conference; (2) the prosecution's withholding of favorable evidence constituting due process violations; and (3) ineffective assistance of counsel at all stages of the proceedings. *Id*.

      The Government's opposition brief was filed on August 10, 2012. Opp'n (Dkt. 198). Benford filed his Traverse Reply on September 20, 2011. Reply (Dkt. 199). Benford filed subsequent amendments to his Traverse Reply on October 31, 2011, (Dkt. 200), November 18, 2011, (Dkt. 201), December 6, 2011, (Dkt. 202), and December 27, 2011, (Dkt. 203). [2]

---

[2] Generally, when a plaintiff files an amended petition, the amended petition "supersedes the original, the original being treated as non-existent." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010). Due to Benford's pro se status and the Court's extreme caution in dealing with habeas petitions, the Court will consider the substantive merits of all potential grounds for relief rather than those located exclusively in the last amended traverse reply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                           Date: June 20, 2012
        SACR 05-10 DOC                                                    Page 4

## II. Legal Standard

A motion to vacate, set aside, or correct sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). If the motion combined with the files and records of the case conclusively show that the prisoner is not entitled to relief, no evidentiary hearing on the issues is warranted. *See id.*

The standard of review of § 2255 petitions is "stringent" and the court "presumes earlier proceedings were correct." *United States v. Nelson*, 177 F. Supp.2d 1181, 1187 (D. Kan. 2001) (citation omitted). In a successful § 2255 motion, the "defendant must show a defect in the proceedings which resulted in a 'complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). It is important to note that "relief is not available merely because of error that may have justified reversal on direct appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184 (1979).

## III. Discussion

Petitioner Benford brings this Motion on three separate grounds. First, Benford alleges that the Court's decision to set a trial date without his counsel being present violated his constitutional right to counsel. Second, Benford alleges that the government withheld favorable evidence and presented false testimony in violation of Rule 16 and/or Benford's due process rights guaranteed by the Fifth Amendment. Third, Benford alleges ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. The Court considers each of these allegations in turn and hereby DENIES Benford's Motion.

### A. Benford's Counsel's Absence at the Pretrial Hearing

Because the Ninth Circuit denied Benford's claim regarding his trial counsel's absence at the pretrial hearing on direct appeal, Benford may not raise this claim again in this petition. It is well settled, that "[w]hen a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                      Date: June 20, 2012
         SACR 05-10 DOC                                       Page 5

---

as a basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000).

The Ninth Circuit held that Benford was not denied his constitutional right to counsel because the February 28th conference was not a critical stage of the proceedings against Benford. *Benford*, 574 F.3d at 1231. "Because nothing other than confirming the pre-existing trial date occurred at the conference, there was no 'loss of significant rights.'" *Id*. at 1232 (quoting *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006)). The Ninth Circuit thus concluded that the absence of Benford's counsel was not *per se* ineffective assistance of counsel. *Id*. at 1233. Benford was given the chance to litigate this claim on direct appeal, and he was unsuccessful. Accordingly, Benford's first claim regarding his pretrial status conference is DENIED.

### B. The Government Did Not Violate Benford's Due Process Rights Under *Brady v. Maryland*

#### 1. The Government's Duty to Disclose Evidence to the Defense

The Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963), requires disclosure of all evidence that is favorable to the accused and material to guilt or to punishment. *U.S. v. Bagley*, 473 U.S. 667, 674 (1985). The *Brady* rule is based on the requirement of due process, its purpose being to ensure that a miscarriage of justice does not occur. *Id*. at 675. The duty to disclose applies even in the absence of a request by the defendant. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Under *Brady*, an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment. *Id*. at 288.

The prosecutor is required to disclose evidence favorable to the accused when its omission is material, that is, when the omission of evidence could affect the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 108 (1976); *Bagley*, 473 U.S. at 678 (holding that evidence is material when its suppression undermines confidence in the outcome of the trial). In determining what evidence is material, the court must consider whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682. The reviewing court should consider the totality of the circumstances with an awareness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                                  Date: June 20, 2012
        SACR 05-10 DOC                                                              Page 6

---

of the difficulty of reconstructing an alternate course of events and surmising the consequences. *Id*. at 683.

### 2. The Government Did Not Withhold Evidence

Although Benford alleges that the Government did not comply with its *Brady* obligation to disclose favorable evidence, the weight of the evidence indicates that the Government did not withhold material evidence from the defense. Benford primarily claims the Government did not disclose Anaheim Police officers' reports and a time-stamped Incident Detail History, which comprise discovery documents numbered pages 1-52. He bases this claim on the lack of facsimile confirmation cover sheets attached to discovery information provided by the Government. Am. Reply (Dkt. 200) at 1. Benford's argument is not persuasive.

The weight of the evidence demonstrates that the pages in question were turned over. First, letters from the Government addressed to defense counsel indicate that a number of documents, including pages 1-52, were turned over to the defense. E.R. at 1-22. Further, trial counsel warranted to this Court that he had received all discovery. Motion Addendum (Dkt. 193) at 2. Had his discovery started with page 53, it is very unlikely that trial counsel would have made that representation. The Court is persuaded that all information was properly disclosed to the defense, and the lack of a fax cover sheet is no indication to the contrary.

Nevertheless, even if pages 1-52 were not turned over, Benford did not suffer a deprivation of his due process rights because those pages do not contain material evidence.

### 3. The Government's Alleged Non-Disclosure Could Not Have Been a *Brady* Violation Because the Evidence was Not Material

Benford alleges that the government withheld two material pieces of evidence that were inconsistent with testimony given at trial. Because the evidence would not have affected the outcome of the trial, Benford's second claim that the Government violated his due process rights under the *Brady* rule is DENIED.

#### i. Discrepancy Regarding Officer Melberg's Testimony

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-596 DOC                                      Date: June 20, 2012
          SACR 05-10 DOC                                                Page 7

---

       Benford first claims the Government failed to disclose evidence that demonstrated a discrepancy concerning which officers were in a police helicopter (codenamed "Angel") during the police chase. At trial, Officer Clint Melberg testified that he observed the police chase of Benford's vehicle as an observer aboard Angel. E.R. at 150-63. There was some evidence to suggest, however, that other officers were in the helicopter. Officer Christopher Harvey, who pursued Benford from his vehicle on the ground, stated in his report that two different officers, Santy and Urso, not Melberg, were in Angel at the time of the chase. Def. Ex. 5. Furthermore, in the Incident Detail History, an abbreviated summary of the police radio traffic during the chase, there is an entry reading "Angel Santy #1009 Urso #1152" that is time-stamped at 20:24:09, an hour and half after the police chase began. *Id*. Benford claims that this discrepancy indicates that Officer Melberg lied about his presence in the police helicopter and that the Government's failure to turn over the Incident Detail History and disclose the apparent discrepancy violated the Government's *Brady* obligation.

       Because the disclosure of this evidence would not have affected the outcome of trial, it is not material and thus cannot be the basis for a *Brady* violation. First, there is not a reasonable probability that this discrepancy would have caused the jury to doubt Officer Melberg's testimony rather than to conclude that the discrepancy was the result of a clerical mistake.

       Second, and more importantly, there is not a reasonable probability that this evidence would have affected the outcome of the trial given the enormous amount of other incontrovertible evidence presented. The Ninth Circuit has instructed courts considering the materiality of evidence involved in alleged *Brady* violations to weigh the withheld evidence "in the context of the entire record." *Agurs*, 427 U.S. at 112-113, n. 21; *U.S. v. Price*, 566 F.3d 900, 913 (9th Cir. 2009) (quoting *U.S. v. Jernigan*, 492 F.3d 1050, 1052 (9th Cir. 2007)). Evidence was considered material, for example, where the prosecution's case depended on a single witness and impeachment evidence of that witness was not disclosed. *Giglio v. U.S.*, 405 U.S. 150 (1972). *See also Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005) ("[i]mpeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the prosecution's case"); *U.S. v. Shaffer*, 789 F.2d 682 (9th Cir. 1986) (undisclosed impeachment evidence was material because the witness' credibility was crucial to the outcome of the trial).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                   Date: June 20, 2012
         SACR 05-10 DOC                                    Page 8

---

Thus, courts must consider the importance of a witness' testimony to the outcome of the trial in determining whether impeachment evidence is material.

Weighing the allegedly undisclosed evidence in the context of the entire record, there is not a reasonable probability that it would have affected the outcome of the trial. Officer Melberg's testimony was not critical to the Government's case. Even if the jury determined Melberg's testimony completely lacked credibility, [3] the weight of the other testimony presented would have almost certainly still led the jury to the same guilty verdict. For example, the Government presented testimony from witnesses at the bank, bank tellers, officers who pursued Benford in their vehicles, and forensic expert witnesses, all of whom testified to Benford's guilt. E.R. at 36. Furthermore, the Government provided evidence taken from the vehicle in which Benford was chased that tied him to the bank robbery, including a grey sweatshirt worn by the bank robber, a handgun, and a bag with $203,906 in cash. *Id* at 106-11, 172-74. The law does not "require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." *Giglio*, 405 U.S. at 154 (quoting *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968)). The evidence in the allegedly undisclosed documents is not material evidence and so the Government's alleged nondisclosure could not have been a *Brady* violation of Benford's due process rights.

### ii. Discrepancy Regarding Officer Bruck's Testimony

Benford identifies another discrepancy concerning the name of the canine unit that Officer Mark Brucks used to apprehend him. Officer Brucks testified at trial that the canine's name was Zeus, while the allegedly undisclosed Incident Detail History states, "dog is Luke", time-stamped 20:15:54. E.R. at 164-65; Def. Ex. 5.

This evidence is certainly not material. As discussed above, the jury had a plethora of other evidence on which to base its guilty verdict. Considered in the context of the entire record, a discrepancy concerning the name of a canine unit had no chance of affecting the outcome of the trial. Therefore, the Government's alleged nondisclosure of evidence detailing the discrepancy in the canine's name could not have been a *Brady* violation of Benford's due process rights.

---

[3] Again, the Court concludes this is unlikely. The jury likely would have attributed the discrepancy to a clerical error.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                          Date: June 20, 2012
        SACR 05-10 DOC                                                 Page 9

---

      Because neither discrepancy found in the allegedly undisclosed evidence would have been material to the outcome of the trial, the Court DENIES Benford's Motion to the extent that he alleges the nondisclosures were *Brady* violations of his due process rights.

      Furthermore, because the Court holds that the undisclosed evidence is not material, Benford does not prevail on his *Mooney-Napue* claim for the knowing use of perjured testimony, as such a claim also requires a showing of materiality. *Mooney v. Holohan*, 294 U.S. 103 (1935); *Napue v. Illinois*, 360 U.S. 264 (1950); *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) ("To prevail on a *Mooney – Napue* claim, a defendant must show . . . (3) the false testimony was material").

### C. Benford's Legal Representation Was Not Constitutionally Deficient

      The standard for evaluating a Sixth Amendment ineffective assistance of counsel claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel's performance is constitutionally deficient when it "so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. A defendant claiming ineffective assistance of counsel bears the burden of demonstrating that, under all the circumstances of his case: (1) "his counsel's performance was so deficient that it fell below an objective standard of reasonableness," and (2) his counsel's deficient performance prejudiced him, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hensley v. Crist*, 67 F.3d 181, 184-85 (9th Cir. 1995) (citations omitted). An after-the-fact examination of counsel's performance "is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.3d 1251, 1253 (9th Cir. 1987).

      The deficiencies alleged by Benford in support of his ineffective assistance of counsel claims do not rise to the level of constitutionally deficient representation. Benford does not satisfy either prong of the ineffective counsel inquiry because he fails to allege performance that fell below an objective standard of reasonableness and further fails to establish with a reasonable probability that, but for counsel's performance, the result of the proceedings would have been different. *See Strickland*, 466 U.S. 668.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-596 DOC                                                  Date: June 20, 2012
        SACR 05-10 DOC                                                                   Page 10

---

Therefore, the Court DENIES Benford's third claim that he received ineffective assistance of counsel.

### 1. Trial Counsel's Performance Prior to Trial

Benford alleges that his trial counsel was inadequately prepared and did not meet with him sufficiently prior to the trial. The evidence demonstrates, however, that trial counsel's performance did not fall below an objective standard of reasonableness. First, Benford incorrectly alleges that trial counsel's first appearance was the day the trial began. In fact, trial counsel appeared on February 7, 2005, the date of Benford's arraignment. (Dkt. 33). Second, as mentioned above, the Ninth Circuit has already held that trial counsel's absence from a pretrial hearing was not *per se* ineffective. *See supra* Part III.A. Third, the record indicates the Court was willing to provide Benford additional time, if necessary, to gather information and interview witnesses. E.R. at 33. Fourth, the record indicates that trial counsel made efforts to obtain evidence prior to the start of trial. *Id.* at 1-22 (letters from the Government acknowledging trial counsel's requests for evidence). Other than counsel's absence from the pretrial conference, Benford provides no explanation of what he believes his counsel should have done. There is absolutely no factual support in the record to suggest that trial counsel's assistance was unreasonably ineffective.

### 2. Trial Counsel's Efforts to Obtain Discovery

Benford alleges that trial counsel did not obtain all necessary reports or discovery before the trial began. Benford, however, offers few facts that persuasively support this allegation. Before the trial began, the Government faxed letters to defense counsel to confirm that it disclosed a number of documents containing evidence. E.R. at 1-22. Benford argues that the lack of facsimile cover sheets attached to the first two letters in the set show that the documents attached to those letters were never disclosed. On the other hand, the Government points to the same letters as evidence that it complied with its discovery obligations and turned over a number of documents to trial counsel. *Id.* Additionally, before being dismissed as the attorney of record, trial counsel stated to the Court, "I do want to inform the Court that I was in possession, to my knowledge, of all reports prior to trial." Mot. Addendum (Dkt. 193) at 2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-596 DOC					Date: June 20, 2012
        SACR 05-10 DOC					Page 11

---

Benford's only evidence that discovery was not turned over is not persuasive; the lack of facsimile confirmation cover sheets with the discovery information in question does not indicate that the documents were not disclosed. Thus, there is nothing that suggests to the Court that trial counsel made inadequate efforts in obtaining discovery, let alone that trial counsel's assistance fell below an objective standard of reasonableness.

### 3. Trial Counsel's Lack of Objections During Trial

Benford faults his trial counsel for not making objections on a number of occasions; however, counsel's decisions do not constitute a departure from an objective standard of reasonableness. Benford argues that trial counsel should have objected to statements made by both the Government and co-defendant's counsel in their summations. Benford also claims that trial counsel was ineffective for not attempting to strike the use of Benford's alias in the indictment and for not objecting to the jury instructions offered by the Government.

Because trial counsel's decisions not to object had a reasonable basis, they do not constitute ineffective assistance of counsel. The decision to make an objection is closely tied to counsel's overall trial strategy. Given the highly deferential review of counsel's strategic decisions, the Court finds that trial counsel had reasonable grounds not to object. *See Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995) ("Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel"). Here, there is a reasonable, if not prudent, explanation for every failure to object raised by Benford. *See Clark v.* Collins, 19 F.3d 959, 965 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

First, counsel had no reasonable basis to object to the statements made in closing arguments by opposing counsel or co-counsel. Co-defendant's counsel argued a duress defense, which suggested that Benford was directing the co-defendant's actions at gunpoint. The Government argued that the white Ford Explorer was waiting behind the store as the getaway vehicle. Both co-defendant's counsel and the Government made arguments that could be reasonably inferred from the record. *United States v. Atcheson*, 94 F.3d 1237, 1244 (9th Cir. 1996) ("It is not misconduct for the prosecutor to argue reasonable inferences based on the record"). Trial counsel's decision not to object to these reasonable inferences was a reasonable, if not prudent, choice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC　　　　　　　　　　　　　　　Date: June 20, 2012
　　　　　　SACR 05-10 DOC　　　　　　　　　　　　　　　　　　Page 12

---

　　　　Benford also claims that trial counsel was ineffective for not objecting to the jury instructions offered by the Government. Yet, unless the petitioner can demonstrate that the jury instructions "so infected the entire trial that the resulting conviction violates due process", he cannot show that defense counsel was ineffective for failing to object to the jury instructions. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Benford does not point to any basis for which counsel could have objected nor does he explain how the jury instructions prejudiced him. For this reason alone, Benford has not met his burden. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993) ("The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack . . . is even greater than the showing required to establish plain error on direct appeal"). Furthermore, trial counsel's decision not to object to the jury instructions was sensible, especially given that the Ninth Circuit reviewed the jury instructions and concluded there was no error. *Benford*, 574 F.3d at 1231.

　　　　Finally, Benford claims his counsel should have raised objections concerning the use of Benford's alias. Benford alleges that the Court's use of his alias when reading the indictment to the jury violated his due process rights and should have been objected to by counsel. Yet Benford offers no authority for this contention, nor does he offer any evidence suggesting that the Court's use of his alias affected the outcome of the trial. Therefore, his claim of ineffective counsel on this basis is without merit.

### 4. Trial Counsel's Efforts to Obtain Witness Testimony

　　　　Benford claims that trial counsel provided ineffective assistance because he did not secure the testimony of certain eyewitnesses who provided law enforcement agents with varying descriptions of the bank robber. The Court disagrees.

　　　　Trial counsel did not ignore the discrepancies mentioned by Benford. Instead of taking the approach Benford suggests, however, trial counsel addressed these discrepancies by extensively cross-examining the law enforcement agents who recorded the eyewitnesses' inconsistent identifications. Trial counsel's decision to highlight these discrepancies via the testimony of the law enforcement agents likely provided more credible and persuasive evidence than would have been gained through the eyewitnesses' direct testimony. This strategic decision is of exactly the kind that deserves broad deference from the Court in assessing ineffective assistance claims. *See Raley v. Ylst*, 470 F.3d 792 (9th Cir. 2006) (holding that defense counsel's decision not to call a witness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC					Date: June 20, 2012
        SACR 05-10 DOC						Page 13

---

was a reasonable trial strategy); *Hill v. Tilton*, 384 F. App'x 639 (9th Cir. 2010) (holding that trial counsel's strategic decision not to call potential witnesses comported with objective standards). Trial counsel's decision to present evidence through particular witnesses was a reasonable, if not more prudent, choice.

      Finally, there is nothing to suggest that, had the discrepancies been raised via the eyewitnesses' testimony rather than via the law enforcement agent's testimony, the outcome of the trial would be affected in any way. Therefore, trial counsel was not ineffective.

### 5. Trial Counsel's Familiarity with Evidence

      Benford next claims that trial counsel was so unfamiliar with the evidence that his legal assistance was constitutionally deficient. Benford asserts that trial counsel was unfamiliar with the footage on the bank's surveillance video, the audio from the police helicopter Angel, and the partially conflicting reports given by Officer Sharkey and identifying witness Rodriguez. These claims have no evidentiary support in the record. Trial Counsel introduced evidence from the bank's surveillance video, E.R. at 86, made appropriate hearsay objections regarding the helicopter's audio recording, *id*. at 156, and made inquiries about the field identification procedure used with Rodriguez, *id*. at 75-85. There is nothing in the record to suggest that trial counsel's assistance fell below an objectively reasonable standard regarding his familiarity with the evidence, nor does anything in the record suggest that more capable lawyering regarding this evidence would have affected the outcome of the trial.

### 6. Trial Counsel's Failure to Meet with Benford Prior to Sentencing

      Benford alleges he received constitutionally deficient counsel because trial counsel did not meet with Benford between the end of the trial on March 10, 2005, and the scheduled sentencing hearing on August 2, 2005. Trial counsel's failure to confer with Benford, however, was not prejudicial in that it had no effect on the sentencing proceedings. The actions taken by the Court ensured that there was not a reasonable probability that trial counsel's failure to meet with Benford affected the sentence imposed by the Court. On the date of the original sentencing hearing, the Court granted Benford's request to appoint new counsel, ordered the preparation of trial transcripts, extended the period to file a motion for a new trial, and continued the sentencing hearing to a later

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                        Date: June 20, 2012
           SACR 05-10 DOC                                       Page 14

---

date. (Dkt. 72). The Court granted subsequent requests for substitution of counsel and additional time to file motions. (Dkt. 90, 104, 109). Benford was given ample time to confer with his newly appointed counsel to prepare for the sentencing hearing. Thus, Benford was not prejudiced by his original counsel's failure to meet with him. Without a reasonable probability that the outcome of the trial would have been affected, Benford's ineffective assistance claim fails.

### 7. Counsel's Motion for Judgment of Acquittal

After trial counsel was replaced by Mr. Brunon as counsel of record, Mr. Brunon filed a motion for judgment of acquittal that Benford claims was so inadequately prepared as to constitute ineffective assistance of counsel. Benford argues that the motion was never filed with the Court and that the motion failed to cite a sufficient amount of case law. Both of these assertions are inaccurate. First, the motion was filed pursuant to a Court order on September 27, 2006. (Dkt. 119). Second, Mr. Brunon's limited use of case law in the motion was not ineffective assistance. Mr. Brunon's motion argued that there was insufficient evidence to support the verdicts and that trial counsel was deficient, citing adequate and relevant case law in support of these contentions. (Dkt. 121).

In any case, Benford fails to allege specific facts identifying any further preparation or research Mr. Brunon should have conducted. In *Moore v. Chrones*, 687 F.Supp. 2d 1005, 1034 (C.D. Cal. 2010), the court considered the petitioner's claims of ineffective assistance for his counsel's alleged failure to sufficiently conduct research and include case law in a motion submitted to the court. The court held that without identifying specific favorable research or other preparation counsel should have taken, the petitioner's allegations were merely conclusory and thus not entitled to relief. *Id*. *See also Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) ("conclusory suggestions that . . . trial counsel provided ineffective assistance fall far short of stating a valid claim of constitutional authority"). Like the petitioner in *Moore*, Benford fails to allege specific research or other preparation Mr. Brunon should have taken and therefore his allegations are conclusory and not entitled to relief. Finally, even if Benford had proposed specific actions that should have been taken by his counsel, he fails to allege how better use of case law would have changed the outcome of the Court's ruling on the motion. Therefore, Benford fails to allege the requisite prejudice required for a claim of ineffective assistance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                       Date: June 20, 2012
        SACR 05-10 DOC                                               Page 15

### 8. Appellate Counsel's Ineffective Assistance

Benford claims that appellate counsel provided ineffective assistance because he did not use the arguments favored by Benford.[4] In a letter to Benford, appellate counsel explains why Benford's arguments are not viable and why the arguments he pursued were the best course of action. Motion Ex. 9. There is no authority for the proposition that appellate counsel is required to present the arguments favored by the client. Benford does not identify any meritorious claims that appellate counsel did not pursue. For example, appellate counsel appropriately did not use Benford's argument for ineffective assistance, which relied on an old version of Fed. Crim. P. Rule 17. *Id*. For the above reasons, there is no support for the contention that appellate counsel's representation fell below an objective standard of reasonableness.

### D. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts reads as follows:

> (a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.
>
> (b) Time to Appeal. Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules. A timely notice of appeal must be filed even if the district court issues a certificate of appealability.

---

[4] The Ninth Circuit denied Benford's request for self-representation after considering a report filed by the Appellate Commissioner and Benford's request for an extension of time to file his *pro se* opening brief and *pro se* objection. (Dkt. 154).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 11-596 DOC                                   Date: June 20, 2012
        SACR 05-10 DOC                                                  Page 16

Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has held that this standard means a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 542 (2000) (internal quotation marks omitted).

Here, Petitioner has not made the requisite showing with respect to whether the Petition is time barred or any of the constitutional claims in the Petition. Accordingly, a Certificate of Appealability is denied.

### E. Conclusion

Benford's Motion to Vacate, Set Aside or Correct Sentence depends on three arguments, all of which fail to establish the denial or infringement of a constitutional right. Benford fails to establish that there was a significant miscarriage of justice and therefore is not entitled to an evidentiary hearing.

Benford's first argument concerning the lack of counsel at the pretrial hearing was already rejected by the Ninth Circuit. Benford's second argument fails to establish that the Government failed to disclose favorable evidence or that such a disclosure would constitute a violation of Benford's due process rights. Finally, Benford's numerous assertions of deficiencies in his legal representation made in his third argument do not rise to the level of constitutionally deficient ineffective assistance of counsel. Because Benford has not made a substantial showing of the denial of a constitutional right as to any issue, he is not entitled to a certificate of appealability. *See* 28 U.S.C. §§ 2253(c)(2), 2253(c)(3).

## IV. Disposition

Benford has not shown a "complete miscarriage of justice" as is required in a § 2255 motion. *Davis*, 417 U.S. at 346. Thus, for the reasons stated above, the Court DENIES Petitioner Bell's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255. Additionally, the Court DENIES the Certificate of Appealability.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 11-596 DOC                     Date: June 20, 2012
       SACR 05-10 DOC                                     Page 17

---

MINUTES FORM 11
CIVIL-GEN                                                              Initials of Deputy Clerk: jcb